UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY BOOKHAMER, *et al.*,

    Plaintiffs,

v.

SUNBEAM PRODUCTS, INC.,

    Defendant.

No. C-09-6027 EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT**

**(Docket Nos. 109, 110, 132, 142)**

## I. INTRODUCTION

This products liability case is set for a jury trial to begin February 4, 2012. Plaintiffs have brought suit against Defendant Sunbeam Products, alleging that Defendant's faulty electric mattress pad caused a fire that killed Victoria DiSilvestro and badly burned her minor son Anthony Bookhamer. Currently pending before the Court are Defendants' two motions for summary judgment. In the first motion, Defendant requests summary judgment on all claims, arguing that Plaintiffs have not produced sufficient evidence to meet their burden under the relevant theories of products liability. Docket No. 109. In the second motion, Defendants request partial summary judgment as to Plaintiffs' claims for punitive damages, arguing that Plaintiffs cannot show that Defendant acted with malice, fraud, or oppression. The Court **DENIES** the first motion and **GRANTS** the second.

## II. FACTUAL & PROCEDURAL BACKGROUND

The parties do not dispute that in the early morning on January 11, 2009, a house fire broke out in the apartment of Victoria DiSilvestro, killing DiSilvestro and severely burning her young son,

1  Anthony Bookhamer.  *See* Alexander Decl. Ex. A (Schmidt Depo, Ex. 1 (Cal Fire Report at 1, 3, 4-
2  5)). An initial fire investigation concluded that the fire had started on or near a sofa in the northeast
3  area of the living room, and noted a frayed and broken electrical appliance cord plugged into an
4  outlet behind the sofa with a controller in the "ON" position. *Id.* at 5. A follow up report concluded
5  that the source of the fire was an electric heating pad or blanket left on the couch in the "ON"
6  position. Alexander Decl. Ex. B (Smith Depo. Ex. 2 (Supplemental Cal Fire Report at 2-3). The
7  parties do not dispute that the device that caused the fire was an electric mattress pad or that the
8  controller for the mattress pad was manufactured by Defendant.[1] Def.'s Mot. Summ. J. at 2; Pl.'s
9  Opp. to Mot. Summ. J. at 4. Additional relevant facts are discussed in the appropriate sections
10 below.

### III.   DISCUSSION

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or

---

[1] Plaintiffs' Third Amended Complaint refers to the device as an electric blanket, but in the instant motion Plaintiffs appear to concede that the product was in fact a mattress pad.

by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted.) The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). The evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in favor to the nonmoving party. *See Anderson*, 477 U.S. at 255.

Plaintiff's Third Amended Complaint ("TAC") alleges causes of action under both negligence and strict products liability theories. Two causes of action are for personal injury to Anthony Bookhamer and the wrongful death of Victoria DiSilvestro under Cal. Code of Civ. Proc. §§ 377.60 *et seq.* TAC ¶¶ 72-100, 134-50. The remaining two are survival actions brought on behalf of the estate of Victoria DiSilvestro under Cal. Code of Civ. Proc. §§ 377.20 *et seq.* TAC ¶¶ 101-33, 151-83. On all four causes of action, Plaintiffs request punitive damages.

A.  Motion for Summary Judgment on Liability

Defendant brings its first motion for summary judgment asking that all of Plaintiffs' claims be dismissed for two reasons. First, Defendant argues that Plaintiffs can provide no evidence that Defendant manufactured the entire electric mattress pad, as opposed to just the controller. Second, Defendant argues that Plaintiffs claims fail because they are unable to provide any evidence showing that the mattress pad was in substantially the same condition immediately before the accident as it was when it left the manufacturer's control.

1.  Evidence that Sunbeam Made the Decedent's Mattress Pad

In a products liability suit, whether brought in negligence or strict liability, "it is obvious that to hold a producer, manufacturer, or seller liable for injury caused by a particular product, there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product." *Garcia v. Joseph Vince Co.*, 84 Cal. App. 3d 868, 874 (Ct. App. 1978). Though there is no dispute that the control unit recovered from the scene of the fire was made by Defendant, there

is a dispute whether the heating element and the rest of the mattress pad were also Defendant's product.[2]

Based on the style of controller recovered from the scene of the fire, Defendant's Senior Director Product Safety Engineer Richard Prins concluded that the controller was manufactured between 1977 and 1987 and was used with a conventionally wired twin sized mattress pad. Prins Decl. ¶¶ 17-19, 25-29 (Docket No. 109-5); Alexander Decl. Ex. J (Prins Depo. at 222) (Docket No. 121) [hereinafter "Prins Depo."]. Starting in 1981, Defendant sold the type of controllers recovered from the site of the fire to Chatham Manufacturing Company for use in Chatham electric mattress pads. Prins Decl. ¶ 31; Prins Depo. at 228. Initially, Defendant sold Chatham the electrical heating element and mattress cover as well as the controller, but later Chatham made their own heating elements and only purchased the controller from Defendant. *Id.* Defendant does not have records on the exact number of controls sold to Chatham, but Prins testified that he believed that for some period of time Defendant sold 400,000 controllers per year to Chatham, and that over time, Defendant sold over one million controllers to Chatham. *Id.* at 223-24, 235-37); Prins Decl. ¶¶ 31-33. Prins was not certain when Chatham stopped using controllers made by Defendant, but he stated that it was no later than the end of 1987. Prins Depo. at 236-37. During this time, Defendant manufactured approximately 250,000 electric mattress pads per year. Prins Depo. at 234-35.

Though Prins testifies that he cannot be certain from the remains of the blanket recovered from the fire whether the electric mattress pad was made by Defendant or Chatham, he does acknowledge that the available evidence indicates that it is possible that it was Defendant's product. For example, he notes that the connector pin recovered from the fire appeared similar to connector pins used in Defendant's electric mattress pads from the relevant era. Prins Depo. at 93-94, 238-39. Though the remains of the heating element were not preserved after the fire, Prins stated that nothing in the photographs of the remains of the heating element is inconsistent with the mattress pad being Defendant's product. *Id.* at 99-100. Viewing Prins' testimony in the light most favorable to

---

[2] There seems to be no dispute that fire originated in some part of the blanket other than the control unit. *See* Prins Decl. ¶ 42; Blanchard Decl. ¶ 9 (Docket No. 109-4); Hull Decl. ¶¶ 32-33.

1  Plaintiffs and drawing a reasonable inference in Plaintiffs's favor, this is sufficient to create a triable
2  issue of fact on the identity of the product's manufacturer.

3  Additionally, Plaintiffs offer the declaration and reports of their expert Wendell Hull, who
4  opined that the product was made by Defendant rather than Chatham. Hull Decl. ¶¶ 27-29, Hull Ex.
5  C at 2-5 (Hull Supp. Report) (Docket No. 122). Hull compared engineering diagrams of connector
6  pins used in several of Defendant's mattress pads to the male connector pin recovered from the site
7  of the fire, and to a connector pin from a Chatham product. *Id.* From this comparison, he concluded
8  that the mattress pad was manufactured by Defendant. *Id.* Defendant objects to Hull's report as
9  lacking foundation and unreliable because he failed to provide dimensional information for the
10 recovered connector pin in his report. Def.'s Reply on Mot for Summ. J. at 8. Defendant also states
11 that it "take[s] issue" with the fact that Hull disconnected the male connector pin from the female
12 socket to which it was connected when found at the scene of the fire.[3] *Id.* at 7. Defendant does not
13 seem, however, to base their objection to Hull's report on this fact, but on Hull's failure to provide
14 the dimensions of the recovered connector pin. *Id.* at 8.

15 In the Ninth Circuit, "[e]xpert opinion is admissible and may defeat summary judgment if it
16 appears the affiant is competent to give an expert opinion and the factual basis for the opinion is
17 stated in the affidavit, even though the underlying factual details and reasoning upon which the
18 opinion is based are not." *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir.1985) (per
19 curiam); *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1008 (9th Cir. 2007). "If further facts are
20 desired, the movant may request and the district court may require their disclosure." *Bulthuis*, 789 at
21 1318; *see also Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 831-32 (9th Cir. 2001) ("'in
22 the context of a motion for summary judgment, an expert must back up his opinion with specific
23 facts.' The factual basis for the expert's opinion must be stated in the expert's affidavit and although

---

[3] Plaintiffs requested leave to file a sur-reply to address allegations Defendant raised in its reply that Hull handled certain evidence improperly. Docket No. 132. As these allegations are not relevant to this Court's analysis of this motion, Plaintiffs' request is denied.

Additionally, Plaintiffs filed objections to a declaration of Defendant's expert Richard Blanchard filed in support of Defendant's reply, which states certain facts about Hull's allegedly improper handling of evidence. Docket No. 143. Since this order does not rely on Blanchard's declaration for any part of the analysis on this motion,ced this Court need not reach this objection.

5

the underlying factual details need not be disclosed in the affidavit, the underlying facts must exist.") (quoting *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir.1981)).

In this case, Hull did not specifically state the dimensions of the recovered connector pin, but in comparing it to an engineering diagram of a connector pin from one of Defendant's mattress pads, remarked that "when compared in detail with the male connector pin recovered from the DiSilvestro fire scene, [the recovered pin] is seen to compare to the engineering details in [the engineering diagram], precisely. This includes details such as the tapered spherical dimple on the side of the pin and other dimensional details noted on the drawing." Hull Supp. Report at 2. Given Hull's observation that the engineering details matched "precisely," it would offer little additional information to provide the exact measurements of the pin; taking his statement as true, those measurements would be identical to the measurements in the identified engineering diagram.[4] Further, it appears that Defendant had the opportunity to examine the pin as well, so it does not appear that Hull had access to any information about the pin that Defendant could not have collected had it so chosen. Def.'s Reply on Mot. for Summ. J. at 7.

Thus, though Prins' testimony alone would be sufficient to create a triable issue on the identity of the product, Hull's opinion also weighs against granting summary judgment here.

2. <u>Evidence that the Mattress Pad's Condition was Unchanged</u>

As an alternative grounds for their motion, Defendant argues that Plaintiff cannot recover in this case because they are unable to show that the 20+ year old blanket which caused the fire was in substantially the same condition as when it left the manufacturer's control. Plaintiffs do not dispute the lack of evidence on the condition of the blanket at the time of the fire, but contend that they do not bear the burden of making such a showing under the applicable test for strict products liability. Pl.'s Opp. to Mot. Summ. J. at 14-16.

---

[4] On November 20, 2012, Plaintiffs filed a supplemental declaration from Hull in support of their proposed sur-reply, along with a table comparing the dimensions of the recovered connector pin with an exemplar pin from a mattress pad made by Defendant. Docket No. 141. Defendant objected that this is an improper and late submission of evidence that should have been attached to Plaintiffs' opposition, and filed a motion to strike. Docket Nos. 140, 142. Plaintiffs offer no explanation why they could not have offered this evidence in support of their opposition. Accordingly, Defendant's motion to strike is granted. Even if this Court were to consider this evidence, it would not change the analysis in this order.

In California, strict products liability was first established under *Greenman v. Yuba Power Products, Inc.*, which held that "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." 59 Cal. 2d 57, 62 (1963).  Three years later, in *Pike v. Frank G. Hough Co.*, the California Supreme Court held that California followed the strict liability rule articulated in § 402A of the Restatement (Second) of Torts, which provides that:

> (1)  One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a)  the seller is engaged in the business of selling such a product, and
>
> (b)  it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

2 Cal. 3d 465, 475 (1970) (quoting Restatement (Second) of Torts § 402A(1)(b)).  Though various cases have since reaffirmed that California follows § 402A of the Restatement for strict product liability (with the exception of the "unreasonably dangerous" requirement), the cases do not specifically address which party has the burden of proof to show that the product reached the consumer without substantial change.  *See Pike v. Frank G. Hough Co.*, 2 Cal. 3d 465, 475 (1970); *San Diego Hosp. Assn. v. Superior Court*, 30 Cal. App. 4th 8, 13 (1994); *Hansen v. Sunnyside Products, Inc.*, 55 Cal. App. 4th 1497, 1514 (1997); *Jenkins v. T & N PLC*, 45 Cal. App. 4th 1224, 1228 (1996).

Plaintiffs argue that the proper test for their strict liability claims is the consumer expectations test, as articulated in *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413 (1978).  In that case, the plaintiff was injured while using a high-lift loader at work, and brought suit against the manufacturer and the company that leased the equipment to his employer.  *Id.* at 416-17.  The Court rejected the defendant's argument that the plaintiff was required to show that the product was unreasonably dangerous in order to prevail on a theory of strict liability.  *Id.* at 417 (citing *Cronin v. J.B.E. Olson Corp.*, 8 Cal. 3d 121, 127 (1972)).  The Court cited *Cronin*, a case in which the California Supreme Court had rejected the requirement in the Restatement § 402A that a product be "unreasonably

1 dangerous." *Cronin*, 8 Ca. 3d at 133-35. Although the Court in *Cronin* quotes § 402A in its
2 entirety, it did not comment on which party has the burden of proof on particular elements, nor did it
3 address any of the other elements under § 402A. *Id.* at 130 n.12.

4 *Barker* holds that a plaintiff bringing a strict liability claim for a defectively designed
5 product may show design defect in one of two ways. First, the plaintiff may proceed under the
6 consumer expectations test by demonstrating that "the product failed to perform as safely as an
7 ordinary consumer would expect when used in an intended or reasonably foreseeable manner."
8 *Barker*, 20 Cal. 3d at 429-30. The Court noted that "[u]nder this standard, an injured plaintiff will
9 frequently be able to demonstrate the defectiveness of a product by resort to circumstantial evidence,
10 even when the accident itself precludes identification of the specific defect at fault." *Id.* at 430.
11 Second, the plaintiff may advance under a risk-benefit theory that allows for consideration of factors
12 such as "the gravity of the danger posed by the challenged design, the likelihood that such danger
13 would occur, the mechanical feasibility of a safer alternative design, the financial cost of an
14 improved design, and the adverse consequences to the product and to the consumer that would result
15 from an alternative design." *Id.* at 431.

16 Plaintiffs contend whether the product underwent substantial change since leaving the
17 manufacturer's control is not an element of the affirmative claim on which they have the burden of
18 proof, but instead is an affirmative defense on which the defendant manufacturer has the burden of
19 proof. In support, Plaintiffs cite a number of cases decided under the consumer expectations test
20 (the theory asserted herein), none of which state that the burden on the plaintiff to show that the
21 product in question had not undergone substantial change since leaving the manufacturer's control.
22 *See Saller v. Crown Cork & Seal Co., Inc.*, 187 Cal. App. 4th 1220 (2010), *review denied* (Dec. 1,
23 2010); *Jones v. John Crane*, Inc., 132 Cal. App. 4th 990 (2005); *McCabe v. Am. Honda Motor Co.*,
24 100 Cal. App. 4th 1111 (2002); *Aetna Cas. & Sur. Co. v. Farmers Bros. Co.*, 65 Cal. App. 4th 574
25 (1998); *Morton v. Owens-Corning Fiberglas Corp.*, 33 Cal. App. 4th 1529 (1995); *Anderson v.
26 Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987 (1991).

27 Plaintiffs also cite to the jury instructions found at CACI 1203, which provide that plaintiffs
28 proceeding under the consumer expectations test have the burden of showing (1) that the defendant

manufactured the product; (2) that the product "did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way"; (3) that the plaintiff was harmed; and (4) that the product's failure to perform as safely as expected was a substantial factor in causing the harm. The instruction omits any reference to substantial change in condition of the product.

On this point, the May 17, 2011 report to the Judicial Council from the Advisory Committee on Civil Jury Instructions contains discussion of the previous changes to this section regarding the burden of proof on changes to the product after it left the manufacturer's control. Report to the Judicial Council: Jury Instructions: Additions and Revisions to Civil Jury instructions (May 17, 2012), *available at* http://www.courts.ca.gov/documents/20110624item2.pdf. The report discusses an earlier decision to shift the burden of proof on the issue of subsequent changes to products.

> In October 2008, the committee received a memorandum from the Chief Justice of the California Supreme Court requesting some reevaluation of the question of subsequent modification of the injury-causing product. At that time, CACI Nos. 1203 [consumer expectations test] and 1204 [risk-benefit test] on design defect placed the burden on the plaintiff to prove that at the time of injury, the product was substantially the same as when it left the defendant's possession or that any modifications were reasonably foreseeable to the defendant. The court called the committee's attention to *Campbell v. Southern Pacific Co.,* in which it had stated that "product misuse [is] a defense to strict products liability only when the defendant prove[s] that an unforeseeable abuse or alteration of the product after it left the manufacturer's hands was the sole reason that the product caused an injury."
>
> In response to the Supreme Court's memorandum, the committee reevaluated its product liability instructions. It decided to remove the element requiring absence of unforeseeable modifications from the plaintiff's burden of proof, and it drafted a new instruction, CACI No. 1245, *Affirmative Defense—Product Misuse or Modification*. CACI No. 1245 was based on *Campbell* and provided a complete defense if the defendant could prove that the product was misused or modified in a way that was not reasonably foreseeable, and that the misuse or modification was the sole cause of the plaintiff's injury. The committee also divided former CACI No. 1207, *Strict Liability—Comparative Fault—Contributory Negligence,* into two separate instructions and noted in the Directions for Use of both that subsequent misuse or modification may be considered in determining comparative fault if it contributed to, but was not the sole cause of, the injury-producing event. After a public-comment period, the Judicial Council adopted all of these proposed changes at its April 2009 meeting.

*Id.* at 5-6 (footnotes omitted).

*Campbell*, decided by the California Supreme Court in 1978, arose out of an injury that the plaintiff sustained when the tractor he was driving at work experienced a steering malfunction and drove off the flatcar that he had been loading. *Campbell v. S. Pac. Co.*, 22 Cal. 3d 51, 55 (1978). The plaintiff brought strict products liability claims against the tractor's manufacturer, who argued that the malfunction had been caused in part by the employer's improper maintenance of the tractor. *Id.* at 56. The Court held that "product misuse [is] a defense to strict products liability only when the defendant prove[s] that an unforeseeable abuse or alteration of the product after it left the manufacturer's hands was the sole reason that the product caused an injury." *Id.*; *see also Perez v. VAS S.p.A.*, 188 Cal. App. 4th 658, 684 (2010), *as modified* (Sept. 17, 2010) (holding that subsequent alteration need not always be the *sole* cause of the injury for a defendant to succeed on this defense, but otherwise reaffirming the rule articulated in *Campbell*).

Thus, the current case law, the CACI jury instructions and the Advisory Committee on Civil Jury Instructions support the conclusion that Plaintiffs do not bear the burden of proof on the issue of subsequent change.

While there are some cases that suggest that the plaintiff may bear the burden of proof on the question of subsequent modification of a product, these cases mostly pre-date *Campbell* and often are not entirely clear in their holdings on the burden of proof. *See Putensen v. Clay Adams, Inc.*, 12 Cal. App. 3d 1062, 1074, 91 Cal. Rptr. 319, 326 (Ct. App. 1970) ("Here the evidence adduced by plaintiff does not afford a reasonable basis for the conclusion that it is more probable that the 'kinking' in the tubing was caused by Clay Adams than that it was not."); *Read v. Safeway Stores, Inc.*, 264 Cal. App. 2d 404, 405 (Ct. App. 1968) ("at trial plaintiff within reasonable limits must eliminate evidence that the explosion was caused by improper handling or use of the bottle either by herself or others."); *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 261 (1964) ("Since plaintiffs introduced or offered substantial evidence that they were injured as a result of a *defect that was present in the car when Ford's authorized dealer delivered it to Vandermark*, the trial court erred in granting a nonsuit on the causes of action by which plaintiffs sought to establish that Ford was strictly liable to them.") (emphasis added). These cases are therefore not persuasive.

In *Henderson v. Harnischfeger Corp.*, 12 Cal. 3d 663, 669 (1974), the California Supreme Court quoted the jury instructions given by the Superior Court, which included the instruction that the plaintiff had the burden of showing "[t]hat the defendant placed the product in question on the market, and the defendant knew, or in the exercise of reasonable care should have known, that the particular product, without substantial change, would be used in the way and for the general purpose for which it was designed and intended." *Id.* at 668 n.3. The Court noted, however, that this instruction was no longer the recommended BAJI instruction, and that the new BAJI instruction provided that "the manufacturer or retailer must be found liable 'for injuries proximately caused by a defect in the article which existed when the article left possession of the defendant(s), provided that the injury resulted from a use of the article that was reasonably foreseeable by the defendant(s).'"[5] *Id.* The case did not explicitly concern the "substantial change" requirement; the primary issue was whether a reversible error had occurred in instructing the jury that the plaintiff had the burden of showing that the decedent was unaware of the danger from the allegedly defective product. Thus, there was no further discussion of the "substantial change" requirement. Even if *Henderson* might be read as implying from the element that the defect existed at the time the product left the defendant, that the plaintiff had to prove no substantial change thereafter, *Henderson* preceded *Campbell* which was much more explicit on this point.[6]

The remaining cases suggesting that plaintiffs may bear the burden of disproving subsequent change to a product are based the pleading rule on strict liability discussed in Witkin's California Procedure:

> The facts that should be alleged in an action against a manufacturer or seller for injuries resulting from a defective condition in the product

---

[5] The most recent BAJI instructions on strict liability for products with design defects states that one of the essential elements is that "The defect in design existed at the time it left the defendant's possession," but does not include an element that the product has not undergone substantial change since leaving the manufacturer's control. BAJI 9.00.5 (Fall 2012).

[6] Additionally, though these two elements may appear at first blush to be mirror images, under the facts in this case, these two questions are analytically distinct. Here Plaintiffs are alleging that the mattress pad was defective because it did not include certain safety devices. Proving that the mattress pad lacked these safety devices when it left the manufacturer's control is entirely possible, even if there is no information about whether the blanket was subsequently abused or misused in a way that contributed to the fire.

11

> are that (a) the product reached the plaintiff without substantial change in its condition; (b) the product was used in the manner intended; and (c) the plaintiff was injured as a result of a defect in the product, of which the plaintiff was not aware, making the product unsafe for its intended use.

4 Witkin, Cal. Procedure: Pleading § 628 (5th ed. 2008). On element (a), the treatise cites to *Vandermark* and *Read*, quoted above. Two California Court of Appeal decisions cite to Witkin and suggest that plaintiffs must plead that there has been no substantial change in the product, though neither contains any discussion of the "substantial change" prong beyond quoting the test as articulated in Witkin. *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 188, 6 Cal. Rptr. 3d 494, 499 (2003) ("For example, a claim for product liability, as asserted by Plaintiffs' third cause of action, is based on showing MII manufactured or sold a product for use or consumption, the product reached Gloria without substantial change in its condition, the product was used in the intended or reasonably foreseeable manner, and Plaintiffs were injured as the result of a defect in the product that rendered the product unsafe for its intended use."); *Milwaukee Elec. Tool Corp. v. Superior Court*, 15 Cal. App. 4th 547, 559, 19 Cal. Rptr. 2d 24 (1993) (quoting § 628 as "the usual form of pleading of a strict liability cause of action"). However, neither contains an explicit discussion of the burden of proof (as opposed to pleading requirements) on these elements.

      The *pleading* rule discussed in Witkin is not necessarily dispositive of the burden of proof. Though the party required to plead an element generally bears the burden of proof on that issue, though the California Supreme Court has recognized that the burden of proof does not always necessarily follow the burden to plead certain facts. *See Lundquist v. Reusser*, 7 Cal. 4th 1193, 1210 (1994) ("We recognize that the Locke decision, by its terms, dealt only with the question of which party bore the burden of *pleading* malice, and did not address specifically the question of which party bore the *burden of proof* with regard to malice.") (emphasis in original); *see also* 2 McCormick On Evid. § 337 (6th ed.) ("In most cases, the party who has the burden of pleading a fact will have the burdens of producing evidence and of persuading the jury of its existence as well. The pleadings therefore provide the common guide for apportioning the burdens of proof. . . . However, looking for the burden of pleading is not a foolproof guide to the allocation of the burdens

12

of proof."). In any event, neither of these cases distinguish or discuss *Campbell*. As the latest word of the California Supreme Court, this Court concludes *Campbell* applies.

In sum, in light of California Supreme Court's explicit holding in *Campbell* that defendants bear the burden on the question of substantial change in condition, this Court is satisfied that CACI 1203 states the law on this point accurately. Defendant, not Plaintiffs, bears the burden of proof on this issue. As Defendant bears the burden of showing a subsequent change to the electric mattress pad, the lack of evidence on this point requires denial of Defendant's motion for summary judgment.

Defendants also argue that Plaintiffs must show that the product had not undergone substantial change in order to prevail on their negligence claims. Def.'s Mot. Summ. J. at 12-13. In a suit for negligence, however, the existence of an intervening cause such as substantial change or alteration of the product does not relieve the defendant of liability if both the intervening cause and the resulting injury were foreseeable. *Akins v. Sonoma County*, 67 Cal. 2d 185, 199 (1967); *Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal. 3d 508, 521 (1978). Additionally, in negligence cases it is the defendant that bears the burden of showing any superceding cause that would obviate liability. *See Doupnik v. Gen. Motors Corp.*, 225 Cal. App. 3d 849, 863, 275 Cal. Rptr. 715, 723 (Ct. App. 1990) (defendant did "not tender this theory of shifted responsibility as a defense to liability"). The relevant CACI jury instructions do not include an element requiring plaintiffs to show the absence of a substantial change in the product's condition. *See* CACI 1220 (general negligence instructions for products liability claims), 1222 (negligent failure to warn). Thus, Defendant's argument for summary judgment based on the lack of evidence on subsequent changes to the product must also be denied as to Plaintiffs' negligence claims.

B.     <u>Motion for Summary Judgement on Punitive Damages</u>

Defendant, in its second motion for summary judgment, argues that Plaintiffs have failed to present sufficient evidence to support an award of punitive damages. Under California law, punitive damages are available in a tort action "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "Summary judgment on the issue of punitive damages is proper only when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression." *Johnson &*

*Johnson v. Superior Court*, 192 Cal. App. 4th 757, 762 (2011) (internal quotation marks omitted). Punitive damages are "for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a). Section 3294 includes the following definitions:

> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
>
> (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
>
> (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

*Id.* § 3294(c). Plaintiffs argue Defendant acted with malice and despicable conduct because at the time the pad was manufactured, Defendant knew that there had been fires caused by the bunching of electric mattress pads yet failed to incorporate available safety features into its electric mattress pads.

Plaintiffs, however, have failed to produce any evidence that would show that Defendant was aware of any dangers stemming from its electric mattress pads during the time period when the mattress pad at issue was manufactured. Plaintiffs produce evidence that Defendant received notice of fires caused by bunching of its electric mattress pads, but this evidence dates from the 1990s and later, after the pad at issue was admittedly manufactured.[7] *See* Prins Depo. at 24, 182-93. Plaintiffs argue that the fact that two of the fires from the 1990s were caused by blankets made during the relevant time period is sufficient to support an inference that fires must have occurred during the 1980s and Defendant must have been notified of them. Such an attenuated inference is not sufficient to support a finding that there is "clear and convincing evidence" of malice, and Plaintiffs fail to cite any case authority to the contrary.

Plaintiffs produce evidence that Defendant was on notice of fires caused by its products during the 1980s, but this evidence all pertains to electric blankets, not electric mattress pads. As

---

[7] Apparently, due to Defendant's document retention policies, any records of fire reports from the 1980s are no longer in existence. Prins Depo. at 24-25.

14

Defendant points out, the products are used differently. Mattress pads are intended to be stretched over a mattress and are less likely than blankets to be bunched.

Plaintiffs point to a 1983 memorandum from Defendant's predecessor company written by a W. Rowe that references an estimate of "about 500 catastrophic failures per year." Alexander Decl. Ex. O (Docket No. 121). The subject of the memo is "New Safe Circuit," and was apparently prompted by a letter concerning a third iteration of a safety circuit that Defendant intended to introduce in 1984. *Id.* Rowe wrote, "I'd like to suggest that before we launch into new circuits etc. that we examine analytically the possibility that the safety circuit needs more than a simple change of components. In order to reach the reliability that is required of the blanket system, we may not be able to get from here to there with our present concepts." *Id.* at 1. Nowhere in the memo does Rowe mention mattress pads or other electric bedding products; the memo is concerned solely with electric blankets. *Id.* at 1-2.

Additionally, the concerns Rowe identifies do not appear to be related to the safety defects Plaintiff is alleging in this case. Plaintiffs point to three specific safety devices that they allege should have been included in Defendant's electric mattress pads. The first of these, the overheat protection circuit identified in U.S. Patent No. 4,034,185, is not mentioned in the Rowe memorandum. *See* Pl.'s Resp. at 4 (Docket No. 125). The second of these, thermostats, are also not discussed in the Rowe memorandum. *Id.* at 4-5. The third, a triode safety circuit, is mentioned in the Rowe memorandum, but only in passing.

The Rowe memo mentions a "triode device," which from context appears to be the safety circuit that Defendant was using for electric blankets at the time. Alexander Decl. Ex. O at 2. The memo mentions that a new proposed safety circuit, the Sidac safety circuit, was unlikely to have a lower failure rate than the Sidac safety circuit. *Id.* This is the only mention of the triode device, and Rowe does not seem to express an opinion on the merits of the triode device. His memo does express concern that the Sidac safety circuit had an unacceptably high failure rate. *Id.* at 1. There is no mention of the Sidac safety circuit elsewhere in the record, and no suggestion that it was included or should have been included in Defendant's electric mattress pads.

The main focus of Rowe's memo, that the engineers working on the electric blankets need to "to consider the DPW blanket as a system" rather than working on the various components in isolation, is apparently irrelevant to the safety concerns raised in this case. Alexander Decl. Ex. O at 1. Instead of focusing entirely on the safety circuit, Rowe suggested also seeking to improve safety by addressing "the problems of breaks and flex guards, increased flex life, can the safety circuit ever reach the needed reliability etc." *Id.* He writes that he and a co-worker were working on "wire problems" but believed that he would be able to make better progress by interfacing with other parts of the blanket design team. For example, they "could increase flex life by increased turns per inch on the core. This runs counter to the need to hold the ohmic resistance down," however, prompting questions about appropriate trade offs in improving the safety of different components. *Id.* Plaintiffs offer no explanation of how these safety concerns are related to the alleged defects that caused the fire in this case or how these concerns would have raised such warning flags with respect to the design of mattress pads so as to constitute willful and conscious disregard of safety risks to the public.

Though there appear to be genuine disputes about whether there were additional safety features Defendant could have included in their mattress pads during this period, there is insufficient evidence that Defendant was aware that the mattress pads posed a danger to consumers. Plaintiffs fail to demonstrate there is clear and convincing evidence that Defendant acted with the requisite malice for punitive damages.

///
///
///
///
///
///
///
///
///

### IV. CONCLUSION

For the forgoing reasons, Defendant's first motion for summary judgment (Docket No. 109) is **DENIED**, and Defendant's motion for partial summary judgment on punitive damages (Docket No. 110) is **GRANTED**. Further, Plaintiffs' request to file a Sur-Reply (Docket No. 132) is **DENIED**, and Defendant's motion to strike the supplemental declaration of Wendell Hull (Docket No. 142) is **GRANTED**.

This order disposes of Docket Nos. 109, 110, 132, and 142.

IT IS SO ORDERED.

Dated: December 20, 2012

_____
EDWARD M. CHEN
United States District Judge