United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY BOOKHAMER, *et al.*,

        Plaintiffs,

    v.

SUNBEAM PRODUCTS, INC.,

        Defendant.

_____/

No. C-09-6027 EMC (DMR)

**ORDER DENYING PLAINTIFFS'
MOTION FOR LEAVE TO FILE
FOURTH AMENDED COMPLAINT**

**(Docket No. 129)**

## I.   INTRODUCTION

      This products liability case is set for a jury trial to begin February 4, 2012.  This Court heard Defendant's two motions for summary judgment on November 30, 2012.  In the first of the two motions, Defendant argued, *inter alia*, that it was entitled to summary judgment because Plaintiffs were unable to provide sufficient evidence that the allegedly defective mattress pad in this case was manufactured by Defendant rather than by Chatham Manufacturing.  Shortly after Defendant filed its motions for summary judgment, Plaintiffs filed the instant motion for leave to file a fourth amended complaint, seeking to add Chatham as a defendant.  Plaintiffs argue that it was not until Defendant filed its first motion for summary judgment and supporting exhibits that Plaintiffs had sufficient information to add Chatham as a defendant.

## II.   FACTUAL & PROCEDURAL BACKGROUND

      The parties do not dispute that a house fire broke out early the morning of January 11, 2009, killing Victoria DiSilvestro and severely burning her young son, Anthony Bookhamer.  Subsequent investigations indicated that the fire was caused by an electric mattress pad that had been left on a

United States District Court

For the Northern District of California

1  sofa in the apartment, plugged in and with the control switch in the "ON" position.  There is also no

2  dispute that the mattress pad's controller was manufactured by Defendant.  Declaration of George E.

3  McLaughlin in Support of Plaintiff's Motion ¶ 3 ("McLaughlin Decl.") (Docket No. 30).  In its

4  motion for summary judgment, however, Defendant noted that it sold the same style of controller to

5  Chatham Manufacturing for incorporation into Chatham-made mattress pads during the relevant

6  period of time.  Docket No. 109.  To prove this fact, Defendant offered the declaration of Sunbeam

7  Senior Director Product Safety Engineer Richard Prins.  *Id.* at 8-9.  Plaintiffs now argue that they

8  did not have sufficient notice of the possibility that Chatham was the manufacturer prior to October

9  25, 2012, the day Defendant filed the motion for summary judgment.  Pl.'s Mot. at 2.  Defendants

10  argue that Plaintiffs had notice of this fact no later than May 2011, when Prins was deposed.  Def.'s

11  Opp. at 1.

12  A.     Previous Amended Complaints and Initial Disclosures

13          Plaintiff filed the initial complaint in this matter on December 23, 2009.  Docket No. 1.

14  Plaintiff filed an amended complaint on May 3, 2010.  Docket No. 17.  After a hearing on a motion

15  to dismiss, Plaintiffs filed a second amended complaint on August 18, 2010.  Docket Nos. 28-29.

16  When the order on the motion later issued, it became clear that the second amended complaint

17  complied with only parts of the order.  Accordingly, the parties stipulated to allow Plaintiffs to file a

18  third amended complaint.  Docket No. 31.  The third amended complaint was filed on September 24,

19  2010.  Docket No. 32.  Defendant's answer, filed October 22, 2010, does not mention Chatham,

20  though Defendant does raise "Fault of Plaintiffs and Others" as a defense, and reserves the right to

21  raise other defenses as they uncovered more information during the course of litigation.  Docket No.

22  35 ¶¶ 191, 198.

23          Defendant's initial disclosures, dated May 28, 2010, do not mention Chatham. McLaughlin

24  Decl. Ex. 3.  At no point did Defendant supplement these disclosures with information about

25  Chatham or Chatham mattress pads.  McLaughlin Decl. ¶ 9.  Defendant argues that it was under no

26  duty to disclose information about Chatham under Rule 26, as it did not anticipate calling any

27  Chatham employees as witnesses or using Chatham documents to support its defenses.  Def.'s Opp.

28  at 3.

1   Shortly before the first deposition of Richard Prins, Defendant produced approximately

2   5,000 pages of documents to Plaintiffs in response to the deposition notice.  McLaughlin Decl. ¶ 14.

3   None of these documents related to Chatham.  *Id.*

4   B.   May 26, 2011 Deposition of Richard Prins

5   Plaintiffs first took Prins' deposition on May 26, 2011.  McLaughlin Decl. ¶ 11, Ex. 1;

6   Declaration of S. Mark Varney in Support of Defendant's Opposition ("Varney Decl.") Ex. A

7   (Docket No. 146).  In that deposition, Prins mentioned Chatham several times.  He first mentioned

8   Chatham in response to a question regarding the male connector pin recovered from the fire.

9   In the time frame, the male pin - - and I can't be certain that the male
10  pin is exactly ours.  As a product in the time frame of this control and
    in mattress pads, we made controls for a company called Chatham
    Manufacturing Company.  They sold and made a product in the
11  beginning.  In the early 80's, we made a mattress pad for them, they
    later on made their own mattress pads.  We sold controls to them.
12

13  In that regard, I do not have a representative sample of their male pin,
    their manufactured male pin, and I didn't do an analysis of the male
14  pin remains which probably will have to be looked at further to further
    identify if it matches the pin drawing that we have.  It doesn't mean
15  that they didn't use the same pin, but there is that possibility that the
    mattress pad could be a Rest Warmer by Chatham Manufacturing
16  Company pad with our control.  There's that possibility.

17  McLaughlin Decl. Ex. 1 at 91-92.  A short time later, Plaintiff's counsel asked Prins a follow up

18  question about Chatham:

19  Q:   And you don't know whether or not Chatham used a similar
         pin?
20
    A:   That is correct or was slightly different and that could have
21       been very close.

22  *Id.* at 95-96.

23  At the close of the deposition, Plaintiffs' counsel again asked Prins about the design of the

24  Chatham mattress pads.  Prins had been discussing the design of the connector unit, and noted that

25  the connector pins were not "in a horizontal line with the body of the connector" but were slightly

26  offset.  Varney Decl. Ex. A at 199.  Plaintiffs' counsel then asked:

27  Q:   Mr. Prins, you mentioned that Sunbeam made controls for a
         period of time for Chatham as well, correct?
28

3

A:      Correct.

Q:      The Chatham product did not have the offset, did it?

A:      When we first started manufacturing the mattress pads for them with the offset and they continued to use the offset for a period of time while we supplied them with controls when they manufactured them.

Q:      But then they went to non-offset?

A:      They went to a different type of connection because they had their own control and the connector was modified, their connectors were modified.

*Id.* at 199-200.

At one point in the deposition, Prins mentioned that Defendant made mattress pads for other manufacturers during the early 1980s. McLaughlin Decl. Ex. 1 at 26. Later, he mentions that Defendant manufactured electric mattress pads for companies such as Sears and JC Penny during the relevant period of time, though products made for such companies may have used different fabric or styles of controllers. *Id.* at 149-50. These mattress pads, however, would have used the same electrical components as the mattress pads sold under Defendant's brand name. *Id.*

Neither party points to any other mention of Chatham in the deposition. It does not appear that Plaintiff's counsel asked for, or that Prins volunteered, information about the number of mattress pads Defendant sold to Chatham during the relevant period of time.

C.      <u>Further Discovery</u>

After the May 2011 Prins deposition and prior to Defendant's motion for summary judgment, Plaintiffs did not request, and Defendant did not produce, any information about the quantity of controllers Defendant sold to Chatham during the relevant period of time. McLaughlin Decl. ¶ 7; Varney Decl. ¶ 4. Prior to the close of discovery, Plaintiffs did not propound any interrogatories or requests for production of documents seeking further information about Chatham. Varney Decl. ¶ 4. Non-expert discovery closed on August 24, 2012. Docket No. 63.[1]

---

[1] On October 23, 2012, this Court denied Plaintiff's motion to re-open non-expert discovery to take depositions unrelated to this dispute. Docket No. 107.

United States District Court

For the Northern District of California

1    The parties disagree about why Prins' deposition was not completed on May 26, 2011.  Pl.'s

2  Mot. at 6 (Plaintiffs claim deposition made clear that Defendant had failed to produce certain

3  necessary documents, and that this necessitated adjourning the deposition); Def.'s Opp. at 1

4  (Defendant claims the parties decided to adjourn for the day because the deposition had already gone

5  from approximately 9:00 am to approximately 5:00 pm).  A June 21, 2011 joint case management

6  statement indicated that the parties were working on setting a date to continue Prins' deposition.

7  Docket No. 48.  While Plaintiffs generally allege that they "repeatedly tried to schedule Mr. Prins'

8  continued deposition," they point to no specific further actions they took to do so until a July 26,

9  2012 letter asking Defendant to schedule a date.  Pl.'s Mot. at 8; McLaughlin Decl. ¶ 16.[2]  In

10  response to that letter, Defendant offered to schedule the remainder of the deposition for September

11  25, 2012.  Id.  The deposition was later moved to October 23, and then October 30 due to health

12  problems that Prins' wife was having.  Id.[3]

13    On September 13, 2012, Plaintiffs served Defendant with a request for production of

14  documents in connection with Prins' deposition.[4]  Varney Decl. ¶ 5.  In response to this request,

15  Defendant produced engineering drawings of controls manufactured by Defendant, including the

16  controls that Defendant sold to Chatham.  McLaughlin ¶ 17.3.  In the letter accompanying the

17  documents, Defendant's counsel stated that the documents produced a that time were "the

18  documents that Richard Prins agreed that we would produce at his deposition."  Fiore Decl. Ex. 1

19  (Docket No. 151-2).

---

[2]  Plaintiffs do allege that in another case their counsel had against Defendant, a deposition with Prins that was set for April 4, 2012 was moved because Prins' wife was having health problems.  McLaughlin Decl. ¶ 16.  Plaintiffs offer no specific facts pertaining to this case or any other as to why they did not request a date to complete the deposition between June 2011 and April 2012.

[3]  Plaintiffs also argue that Defendant unreasonably delayed producing Prins for the first half of the deposition, and offer facts to this effect.  Pl.'s Mot. at 6.  Given that the first half of the deposition ultimately occurred over a year prior to the close of non-expert discovery, it is not clear what relevance this delay has for the instant motion.

[4]  Defendants contend that this request was untimely as non-expert discovery was already closed at this point.

United States District Court

For the Northern District of California

1    At no time between the May 2011 deposition of Prins and the September 2012 request for

2    production did Plaintiffs promulgate any written discovery or notice any deposition directed at

3    determining whether the mattress pad could have been manufactured by Chatham.  Nor did Plaintiffs

4    bring any motion to compel the completion of Prins' deposition.

5    D.    Motion for Summary Judgment and October 30, 2012 Prins Deposition

6          On October 25, 2012, Defendant filed a motion for summary judgment, attaching a

7    declaration by Prins in support.  Docket No. 109 Ex. 5 ("Prins Decl.").  That declaration contained

8    the following statements pertaining to Chatham:

> 31.   For some years between 1977 and 1987, Sunbeam
>        manufactured and sold the same type of control as recovered
>        from the fire scene to Chatham Manufacturing Company for
>        use in Chatham conventionally wired mattress pad products.
>
> 32.   Chatham annually purchased approximately 400,000
>        conventionally wired mattress pad control sets from Sunbeam;
>        in all, Sunbeam sold in excess of one million of these controls
>        to Chatham.
>
> 33.   During the years that Sunbeam sold such controls to Chatham
>        Manufacturing Company, Sunbeam made about 250,000 of its
>        own conventionally wired mattress products on an annual
>        basis.
>
> . . .
>
> 38.   Based on all photographs I reviewed of the fire scene and the
>        evidence that was preserved from the fire scene, there is
>        insufficient evidence to conclude whether the conventionally
>        wired mattress pad product was one made by Sunbeam or
>        Chatham.

21   Prins Decl. ¶¶ 31-33, 38.

22         The second half of Prins' deposition finally went forward on October 30, 2012.  In the

23   deposition, he affirmed that Defendant had sold control units for electric mattress pads to Chatham

24   during the relevant period of time.  McLaughlin Decl. Ex. 1 at 223.  He confirmed the statements

25   from his declaration regarding the approximate number of control units Defendant sold to Chatham,

26   though he acknowledged that he did not have specific records to back up these figures.  *Id.* at 224.

27   Prins offered additional detail about the timeline of the relationship between Defendant and

28   Chatham, stating that for the first year, Defendant made all of the electrical components for

United States District Court

For the Northern District of California

1   Chatham's mattress pads, and that for some years after that, Defendant supplied the control unit, but

2   Chatham made their own heating element.  *Id.* at 228-29, 235-36, 260-61.

3           At the deposition, Prins testified that the control unit found at the scene of the fire appeared

4   to be one manufactured by Defendant.  McLaughlin Decl. Ex. 1 at 261.

5           Q:      And the mattress pad and the control that's the subject of this
                    case, the one that was filed in the - - found in the Bookhamer
6                   home, was a control that - - the portions of the control appear
                    to be manufactured by us; correct?
7
            A:      By Sunbeam, yes.
8
            . . .
9
            Q:      But that the actual mattress pad itself may certainly have been
10                  manufactured by Chatham; correct?[5]

11          A:      Correct.

12  *Id.* at 261.

13          Plaintiffs contend that because of Prins' statements in his declaration and second deposition,

14  "[t]he facts in this case have recently changed" such that they should be permitted to file an

15  amended complaint adding Chatham as a defendant.  Pl.'s Mot. at 2.

16                          **III.   DISCUSSION**

17          Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend pleadings

18  should be freely given when justice so requires.  *See* Fed. R. Civ. Proc. 15(a)(2).  The Ninth Circuit

19  has held, however, that "[a]mendments seeking to add claims are to be granted more freely than

20  amendments adding parties."  *Union Pac. R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th

21  Cir. 1991).  In determining whether to grant or deny a motion for leave to amend, the court considers

22  four factors: "(1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to the opposing

23  party; and (4) futility of the proposed amendment."  *Lockheed Martin Corp. v. Network Solutions,*

24  *Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (citing *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 878

25  (9th Cir. 1999)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  These factors do not carry

26

27          [5]  Plaintiffs' counsel objected to this question as leading.  McLaughlin Decl. Ex. 1 at 261.  As
    it is Plaintiffs who are now citing to this section of the deposition, this Court will treat the objection
28  as withdrawn.

United States District Court

For the Northern District of California

1    equal weight; prejudice is the crucial factor.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d

2    1048, 1052 (9th Cir. 2003).

3            The question of prejudice is closely linked with analysis on undue delay; prejudice is

4    generally found where the amendment would cause substantial delay in the proceedings.  *See*

5    *Lockheed Martin*, 194 F.3d at 986 (finding prejudice where the amendment would require the court

6    to reopen discovery and delay the proceedings); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1995)

7    (indicating that issue is whether the amendment will cause "[e]xpense, delay, and wear and tear on

8    individuals and companies").  One key factor in determining whether there has been undue delay is

9    "whether the moving party knew or should have known the facts and theories raised by the

10   amendment in the original pleading."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir.

11   1990).  Courts generally find both undue delay and prejudice where amending the complaint would

12   require re-opening discovery.  *See Lockheed Martin*, 194 F.3d at 986; *Solomon v. N. Am. Life &*

13   *Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (finding undue delay and prejudice where

14   plaintiff sought to amend complaint on the eve of the discovery deadline); *Campbell v. Emory*

15   *Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) ("Prejudice and undue delay are inherent in an

16   amendment asserted after the close of discovery and after dispositive motions have been filed,

17   briefed, and decided.").

18           In this case, allowing Plaintiffs to amend their complaint would clearly result in undue delay.

19   In their initial motion, Plaintiffs state that they are not seeking to move the trial date or other pre-

20   trial deadlines.  Pl.'s Mot. at 11.  In the reply brief, however, they concede that granting their motion

21   and allowing them to add Chatham as a defendant would require a "brief continuance," though they

22   contend that it would not require more than a limited re-opening of discovery.  Reply at 6-7.  At this

23   point, non-expert discovery in this matter has been closed for approximately three months.  Docket

24   No. 63 (scheduling order).  While the parties seem to have some ongoing disputes about expert

25   discovery, expert discovery is well underway.  Docket No. 147 (joint case management statement).

26   The deadline for dispositive motions has passed, and this Court has heard and decided Defendant's

27   motions for summary judgment.  Trial is set to begin in just over two months.  Plaintiffs' proposed

28   amended complaint adds an additional defendant, Chatham, who would need the opportunity to

United States District Court

For the Northern District of California

1  conduct its own discovery, file its own potentially dispositive motions, and prepare for trial.  If

2  Chatham were added as a defendant, they would need months to conduct discovery in defending this

3  case.  Under these circumstances, Plaintiffs' contention that a brief postponement and limited

4  additional discovery would be sufficient is plainly unrealistic.

5          Plaintiffs argue that their late request is justified because they were previously unaware that

6  Chatham was a potential defendant, and because Defendant failed to disclose required information

7  about Chatham.  Plaintiffs state that prior to the Prins declaration and the second half of the Prins

8  deposition in late October 2012, they did not have sufficient information to satisfy the requirements

9  of Rule 11 in adding Chatham as a defendant. Pl.'s Mot. at 4-5. In his May 2011 deposition,

10  however, Prins specifically identified the possibility that Chatham may have manufactured the

11  mattress pad that caused the fire.  Varney Decl. Ex. A at 91-92.  Plaintiffs' counsel asked several

12  follow up questions.  Varney Decl. Ex. A at 91-92, 95-96, 199-200.  It is thus clear that Plaintiffs

13  had inquiry notice of the possibility that Chatham had made the mattress pad that started the fire.

14          Other than the follow up questions in the deposition, it appears that Plaintiffs sought no

15  additional discovery on Chatham in the fifteen months between the initial Prins deposition and the

16  close of non-expert discovery in August 2012.  Indeed, from the record on this motion, it is not clear

17  that they took any affirmative steps to try and schedule the remainder of Prins' deposition until June

18  2012, more than a year after the initial deposition.  Even if Plaintiffs did not have sufficient

19  information to add Chatham as a defendant based solely on Prins' remarks in the deposition, they

20  offer no explanation why they could not have conducted  discovery during the fifteen months

21  between the first Prins deposition and the close of discovery to determine whether there might be a

22  basis to add Chatham as a defendant.

23          Plaintiffs argue that, under Rule 26, "Sunbeam had an affirmative duty, *without waiting for a*

24  *discovery request by Plaintiffs,* to timely provide Plaintiffs with information supporting its

25  affirmative defense concerning Chatham."  Reply at 3.  As an initial matter, Plaintiffs'

26  categorization of the argument that Chatham may have made the product as an affirmative defense is

27  an error.  Plaintiffs bear the burden of showing that the allegedly defective mattress pad was

28  Defendant's product as one of the elements of their prima facie case.  *See Garcia v. Joseph Vince*

**United States District Court**
For the Northern District of California

1   *Co.*, 84 Cal. App. 3d 868, 874 (Ct. App. 1978) ("Regardless of the theory which liability is

2   predicated upon, whether negligence, breach of warranty, strict liability in tort, or other grounds, it is

3   obvious that to hold a producer, manufacturer, or seller liable for injury caused by a particular

4   product, there must first be proof that the defendant produced, manufactured, sold, or was in some

5   way responsible for the product."); CACI 1203 (first element to for strict liability consumer

6   expectations test is that the defendant manufactured, distributed or sold the product); CACI 1220

7   (first element for product liability negligence claim is that the defendant designed, manufactured,

8   supplied, installed, inspected, repaired, or rented the product).  "A defense which demonstrates that

9   plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. S. California*

10   *Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).

11          Rule 26 requires that "a party must, without awaiting a discovery request, provide to the

12   other parties:

13          (i) the name and, if known, the address and telephone number of each
individual likely to have discoverable information – along with the

14          subjects of that information – *that the disclosing party may use to
support its claims or defenses*, unless the use would be solely for

15          impeachment;

16          (ii) a copy – or a description by category and location – of all
documents, electronically stored information, and tangible things *that*

17          *the disclosing party* has in its possession, custody, or control and *may
use to support its claims or defenses*, unless the use would be solely

18          for impeachment;

19   Rule 26(1)(A) (emphasis added).  Defendant argues that it was under no duty to disclose further

20   information about Chatham under Rule 26 because it did not intend to call any witnesses affiliated

21   with Chatham in its defense, and did not intend to rely on any Chatham documents in presenting its

22   case. Def.'s Opp. at 3.  Indeed, in its motion for summary judgment, Defendant relied only on the

23   testimony of Richard Prins to establish the possibility that Chatham may have manufactured the

24   mattress pad.  Docket No. 109 at 8-9.  Prins was identified as a potential witness in Defendant's

25   initial disclosures.   McLaughlin Decl. Ex. 3 at 4.  The only documents related to Chatham that the

26   parties discuss in this motion are the engineering diagrams that Defendant produced to Plaintiffs on

27

28

United States District Court

For the Northern District of California

1   October 3, 2012.[6]  Defendant did not rely on these diagrams in its motion for summary judgment.

2   *See* Docket No. 109 and attachments.  Thus, as Defendant did not intend to rely on Chatham

3   documents or witnesses, and in fact did not rely on them in its motion for summary judgment, it

4   appears that Defendant did not have an obligation under Rule 26 to disclose any additional

5   information about Chatham.[7]

6        Plaintiffs have thus not shown good cause for their delay in requesting to add Chatham as a

7   defendant in this case.  This significant delay, and the expense resulting from re-opening discovery,

8   are sufficient to show prejudice to Defendant.  *See Lockheed Martin*, 194 F.3d at 986.  While it is

9   not clear that the other factors under Rule 15 weigh heavily against allowing the amended

10  complaint,[8] the undue delay and prejudice that would result from granting Plaintiffs' motion are

11  significant, and are enough to deny that motion.

12       Defendant requests that, in the event that this Court grants Plaintiffs' motion, Plaintiffs be

13  required to pay the fees and costs associated with the delay and re-opening of discovery.  Def.'s

14  Mot. at 9.  As this Court is denying Defendant's motion, this issue is moot.

15

16  _____

17       [6] Plaintiffs point to the letter accompanying these documents, which states that Prins had
    agreed that Defendant would produce the documents at his deposition.  Plaintiffs do not indicate that
18  they filed any discovery requests or motions to compel regarding these documents between the May
    2011 Prins deposition and the close of discovery in August 2012.  While the letter does suggest that
19  Defendant may have been seriously delinquent in producing documents they had indicated they
    would provide, this still does not negate the fact that Plaintiffs had notice that Chatham may have
20  manufactured the mattress pad almost a year and a half before filing the instant motion.

21       [7] Of course, if Defendant attempts to introduce any previously undisclosed witnesses or
    documents related to Chatham at trial, there may be grounds to exclude them at that point for failure
22  to comply with Rule 26 and the duty to supplement disclosures.  *See* Rule 26(e)(1)(A).

23       [8] Defendants argue that Plaintiffs' attempt to amend the complaint at this late point in the
    litigation is in bad faith, motivated by the fact that they recently lost various discovery motions and
24  thus wish to bring in Chatham as a defendant so they can re-open discovery.  Def.'s Opp. at 4.
    While there does not seem to be a good excuse for Plaintiff's delay in seeking to add Chatham, the
25  current record does not give sufficient indication that the motion is brought in bad faith, particularly
    since there is a sufficient basis to think that Chatham may have been the manufacturer of the
26  mattress pad.

27       Similarly, it does not appear that amending the complaint would be frivolous.  While it
    appears that there may be a statute of limitations issue on some claims, *see* Pl.'s Mot. at 9-10,
28  Plaintiffs assert arguments that appear non-frivolous for why the statute of limitations has not yet
    run as to at least some of the claims.

United States District Court

For the Northern District of California

1    Plaintiffs also request that Defendants be required to pay fees and costs for "[a]ny

2 duplicative efforts" since they argue that Defendant did not provide timely notice of information and

3 arguments related to Chatham's possible manufacture of the mattress pad.  Pl.'s Reply at 7-8.  As

4 discussed above, it does not appear that Defendant was delinquent in disclosing required

5 information.  There was sufficient disclosure in Prins' first deposition.  Accordingly, this Court

6 denies Plaintiff's request for fees.

7                          **IV.    CONCLUSION**

8    For the forgoing reasons, Plaintiffs' motion to file a fourth amended complaint is **DENIED.**

9 The requests of both Defendant and Plaintiffs for fees and costs are also **DENIED.**

10    This order disposes of Docket No. 129.

11

12    IT IS SO ORDERED.

13

14 Dated:  December 20, 2012

15                                    _____
                                         EDWARD M. CHEN
16                                         United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

12